**HOME BOX OFFICE, Plaintiff,**

v.

**SHOWTIME/THE MOVIE CHANNEL, Defendant.**

**No. 87 Civ. 4662 (RJD).**

United States District Court, S.D. New York.

July 24, 1987.

John E. Nathan, Fish & Neave, New York City, for plaintiff.

Richard Lehv, Weiss, Dawid, Fross, Zelnick & Lehrman P.C., New York City, for defendant.

## MEMORANDUM OF DECISION AND ORDER

DARONCO, District Judge.

This is an action for wrongful use in commerce of false designations of origin, false deceptions and false representations under Section 43(a) of the United States Trademark Act, 15 U.S.C. § 1125(a), for service mark infringement under Section 32(1) of the United States Trademark Act, 15 U.S.C. § 1114(1), for service mark and trade name infringement at common law, for unfair competition at common law, and for violation of the New York State Anti-Dilution Statute, New York General Business Law § 368–d.

Plaintiff, Home Box Office ("HBO"), claims that defendant, Showtime/The Movie Channel's ("Showtime") use of certain slogans is likely to cause confusion between defendant's and plaintiff's television services.

The five slogans in question are the following:

(1) "SHOWTIME & HBO. It's Not Either/Or Anymore;"

(2) "SHOWTIME & HBO. Together is Better;"

(3) "Why SHOWTIME & HBO make such a perfect pair;"

(4) "Play the Showtime PERFECT (HBO, Showtime) PAIR Instant Winner Game;" and

(5) "The MOVIE CHANNEL & HBO. It's Not Either/Or Anymore."

HBO fears that consumers will misconstrue these ads, believing that HBO has merged with Showtime, or that HBO is endorsing, sponsoring or co-sponsoring Showtime, or that HBO has ceased to offer its services individually or with "Cinemax," one of HBO's affiliated cable services (HBO itself markets a cable television package: "HBO & Cinemax").

The plaintiff, HBO, having moved for a preliminary injunction and the parties having submitted briefs video-tapes, affidavits and other evidence to the Court, and the Court having considered those materials and oral argument having been heard, the Court makes the following findings.

## BACKGROUND

Plaintiff, Home Box Office, is the owner of a registered service mark HBO used in connection with advertising, offering for sale, and selling cable television services and related products. HBO leads the nation in the number of subscribers to its cable television services. In addition to its HBO services, plaintiff has for many years offered and now offers a companion television service under its service mark CINEMAX. Plaintiff sometimes promotes its HBO and CINEMAX services together, using the slogans "HBO & CINEMAX" and "HBO CINEMAX."

Defendant, "Showtime/The Movie Channel," provides cable television services under its service marks SHOWTIME and THE MOVIE CHANNEL.

The parties apparently are in accord that they compete in the same market place providing the identical *type* of services, though not identical services. The parties are also apparently in accord that at the advent of cable television, and for a time thereafter, HBO and Showtime featured many of the same films. Gradually, over the last few years, these two services have negotiated "exclusive" agreements with certain studios for all or part of their cable products. This has resulted in a gradual, but growing dissimilarity between the films shown on the two cable services.

The cable services offered by the parties are purchased through local cable operators. Consumers deal directly with their local cable operators who, for a monthly fee, install equipment in the consumers' homes which enable them to receive one or more cable services. Cable operators mar-

ket their services to consumers by direct mail or through bill-stuffers. These mailings describe available cable services and describe various combinations or packages in which the services can be purchased. It is not uncommon, therefore, to see the names of the various cable services presented in combinations. Indeed, in the past and on a limited basis, HBO and Showtime cooperated in the producton of marketing materials which featured the names of their respective services in various combinations. Whatever interval of good feeling, that may have once existed between the parties, came to an abrupt close at the opening of The National Cable Television Association convention in Las Vegas in May, 1987. At this trade convention, Showtime launched a new promotional campaign featuring the slogan "Showtime & HBO. It's Not Either/Or Anymore," among others. In connection with this campaign, Showtime distributed various promotional items, to wit: tote bags, buttons, sunglasses, and chocolate chip cookies bearing the slogan: "Showtime & HBO. It's Not Either/Or Anymore." These items, all distributed at the trade convention in Las Vegas, carried the slogan accompanied by minute disclaimers. For example, Showtime's cookie, sunglasses, button and 3'5" x 2'3" poster bore a disclaimer in letters barely 1/16 of an inch in height. The 14" x 13" x 3" tote bag, on only one of the two sides where the slogan appeared, contained a disclaimer in letters 1/4 of an inch in height. The disclaimer on the three inches in diameter button was located well out of normal view on the back of the button's outer edge. The disclaimer for the sunglasses does not even appear on the glasses themselves but on the accompanying cardboard packaging.

The content of the disclaimers on these items differs from item to item, with the most complete disclaimer appearing on the tote bag. There the disclaimer reads, "HBO is a registered service mark of Home Box Office, Inc. Showtime is a registered service mark of SHOWTIME—THE MOVIE CHANNEL, INC. which produced this piece © 1987. Showtime/The Movie Channel Inc. All Rights Reserved.

Showtime/The Movie Channel Inc. is not affiliated with Home Box Office Inc." Here the content of the disclaimer, without finding as to the adequacy of that content, is not as objectionable as its size and place. With specific respect to their respective media, these disclaimers are inadequate as being virtually undiscernible and appear calculated to escape ordinary notice. There has been some dispute as to whether some of these materials, specifically the tote bags, were distributed after the May convention. Counsel for Showtime represents that these materials are no longer in use and are not scheduled for promotional distribution either at trade shows or to consumers in the future.

In addition to the materials distributed at the May trade convention, Showtime had sponsored at least one large billboard in the area bearing the slogan, "SHOWTIME & HBO. It's Not Either/Or Anymore" with no discernible disclaiming material, although it appears that the billboard may have contained a minute disclaimer at its bottom. Finally, the promotional campaign for the trade convention featured a 60 second videotape (hereinafter, the "Trade Video"), with "Showtime & HBO. It's Not Either/Or Anymore" as a repeated theme.

Subsequent to the trade show in Las Vegas, Showtime made changes in its consumer advertising and produced a second videotape intended for advertising to consumers (hereinafter "Consumer Video 1"). HBO objected to the use of all these materials and proceeded by Order to Show Cause to enjoin their use.

Counsel first appeared before the Court on June 30, 1987. At that time, the Court heard argument but was unable to review Consumer Video 1 owing to the unavailability of videotape machinery. Counsel returned on July 1, 1987, at which time, Consumer Video 1 was viewed, further argument was heard and more evidence admitted.

Following oral argument and at the conclusion of a brief conference with the Court, counsel entered into a consent order agreeing to further attempts at mutual accommodation. These negotiations broke

down and counsel appeared before the Court July 15, 1987, at which time, Showtime presented a third video (hereinafter "Consumer Video 2"), intended to replace Consumer Video 1 for consumer advertising, as well as numerous bill-stuffers and other assorted materials meant for distribution to consumers and local cable operators. HBO reviewed the aforementioned materials and concluded that it could not acquiesce in their use. HBO renewed its objections to the use of these materials and seeks to enjoin their use.

## DISCUSSION

■ In order to succeed on a motion for a preliminary injunction, the plaintiff must establish:

(a) irreparable harm; and

(b) either

(1) likelihood of success on the merits, or

(2) sufficiently serious questions going to the merits to make them a fair ground for litigations and a balance of hardships tipping decidedly in the plaintiff's favor. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985); *Kaplan v. Board of Education*, 759 F.2d 256, 259 (2d Cir.1985). In trademark cases, "[i]n the preliminary injunction context, a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm." *Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir. 1982). As stated elsewhere, irreparable injury is established where "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

■ In a case such as this where the plaintiff has moved for injunctive relief after the limited introduction of the allegedly infringing materials at a trade show but before these materials have been widely disseminated to the public, "it is particularly difficult to make any showing of actual confusion. Yet the threat of irreparable injury can be great, especially where the new mark is introduced with great fanfare." *Lobo Enterprises, Inc., trading as Tunnel Bar a/k/a The Tunnel v. The Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir. 1987).

In support of its contention that the defendant's advertising campaign is likely to cause consumer confusion, HBO presents a study, prepared in contemplation of litigation, by Robert C. Sorensen Marketing/Management Corporation. In Sorensen's study, consumers randomly selected at shopping malls in four cities were questioned with respect to their reactions concerning either the "Showtime & HBO. It's Not Either/Or Anymore" billboard described *supra*, or the one minute Trade Video. Sorensen's study concludes:

It is my professional conclusion that measured by any one of serveral [sic.] criterea [sic.] substantial confusion ensues on the part of television cable and non-cable subscribers throughout the United States when they view either the Showtime television commercial or billboard sign featuring the message "SHOWTIME & HBO. It's Not Either/Or Anymore."

A distillation of his cross-tabulations leads him to conclude that approximately 70 percent of the respondents to the survey evinced confusion with respect to the Showtime advertising campaign. Mainly this confusion concerned confusion as to the sponsorship of the advertisements, and confusion as to whether there was a business relationship between HBO and Showtime.

Even assuming, *arguendo*, perfection in mechanical methodology, the Court has the following reservations with respect to the Sorensen report. The study is based upon *consumer* reactions to the Trade Video and, therefore, is of limited value to the Court. First, the Trade Video was made for presentation to *people in the trade*, who, one can infer would possess a higher degree of sophistication than does the average consumer. Second, the Sorensen sur-

vey contains no evidence of consumer reaction to Showtime's Consumer Video 2, the commercial proposed for production and distribution. Clearly, the Court cannot indulge in wholesale extrapolation, applying the results of a survey involving a different videotape made for a different target audience to predict consumer reaction to Consumer Video 2. To do so would violate fundamental principles of market research.

Moreover, the Sorensen report had no way to distinguish between the reasonable consumer, and the reasonable consumer intending a purchase. It is likely that the latter would make a closer inspection. See *Charles of the Ritz Group v. Quality King*, 636 F.Supp. 433, 437 (S.D.N.Y.1986).

Finally, question 5(a), "Would you say you believe that there *is* or *is not* a business relationship between Showtime and HBO?," a key question in the Sorensen survey and important for his conclusion, is leading because it does not give respondents a fair opportunity to say that they do not know the answer, forcing them to guess. Moreover, the question does not ask the viewer whether his or her response was made in reaction to the Showtime commercial, and the question does not define the term "business relationship."

In *Beneficial Corp. v. Beneficial Capital Corp.*, 529 F.Supp. 445 (S.D.N.Y.1982) where the issue was whether the name "Beneficial Capital Corp." infringed "Beneficial Finance System Companies," a question similar to Sorensen study question 5(a) was asked:

> Do you think that there may or may not be a business connection between Beneficial Capital Corp. and the Beneficial Finance System Companies?

529 F.Supp. at 450.

The Court rejected the proferred study in part because "the question framed has a 'leading' quality, not well suited to eliciting an uninfluenced reaction from the persons questioned." *Id.*

The above stated reservations to the Sorensen report notwithstanding, the Court has reviewed the Trade Video and the Las Vegas billboard upon which the report was based, and adopts the general conclusion of the report that the tape and billboard would confuse and mislead consumers.

With specific respect to the billboard, a photograph of which was before the Court, it presents only the slogan "Showtime & HBO. It's Not Either/Or Anymore." There is no other *discernible* additional or disclaiming material in the photograph presented to the Court. No comparative claim was made with respect to the cable services of the parties.

These facts surrounding the subject of the billboard emphasize its similarity to the materials presented at the Las Vegas trade show and serve to finely focus the attention of the Court on the slogan which is at the heart of the instant dispute. The language of that slogan, "Showtime & HBO. It's Not Either/Or Anymore," merits in depth consideration at this juncture.

HBO contends that the phrase is patently false and misleading and as such violates the Lanham Act; moreover, as the phrase is not truthful it is not protected commercial speech in the context of a comparative advertisement. This assertion focuses on the "either/or" proposition presented in the slogan.

Most frequently in common usage "either/or" is an alternative formula, "designating a proposition, situation, etc. limited to only two alternatives." *Webster's New World Dictionary of The American Language* (2d College Ed.1978). To the grammarian this formula presents a pair of disjunctive correlatives implying a choice between alternatives. When preceded by the word "not," the proposition is negated.

The thrust of the Showtime advertisements is that the two cable services now offer substantially different catalogs of movies; therefore, in order to obtain the widest selection of movies, the consumer should buy both Showtime and HBO. The slogan "not either/or" can mean "both." Therefore, the slogan is not patently false.

The gravamen of HBO's complaint is that the Showtime campaign will "cause confusion or mistake or deceive persons into the erroneous belief that the defendant and plaintiff have merged or otherwise

combined, or that defendant's television services are plaintiff's, or that defendant or its television services or its advertising and promotional campaign are authorized by plaintiff or are endorsed by plaintiff or are sponsored by plaintiff or are connected in some way with plaintiff and its HBO television services, or that plaintiff has ceased to offer or promote its HBO television services individually." Standing alone, the slogan also admits these conclusions. But the slogan is not patently false; it is simply ambiguous to the extent that it admits multiple meanings—two of which are those urged by the parties to this action.

The issue resolves then to whether the context in which the slogan appears dispels this ambiguity. It should be noted at the outset that any use of the slogan by itself, without adequate disclaiming information appropriate to the selected medium, would create the likelihood of confusion and is, therefore, enjoined. The promotional items distributed at the Las Vegas convention, to wit, the sunglasses, cookies, buttons, tote bags and posters, fall into this category and their continued use is enjoined.

These materials present little more than the bald use of the slogan, "SHOWTIME & HBO. It's Not Either/Or Anymore." None of these materials presents the consumer with contextual information which resolves the ambiguity of the slogan; no comparative claim is made regarding the services of the two cable companies; and whatever disclaiming material is present is inadequate owing to its obscurity.

■ The videotapes before the Court cannot be summarily enjoined under the above reasoning because these tapes do present the consumer with a context within which the slogan, "SHOWTIME & HBO. It's Not Either/Or Anymore" appears. The Court's analysis will focus on the Trade Video, found confusing by both the Sorensen study and the Court, and Showtime's Consumer Video 2 which, the Court finds, does contain adequate contextual explanatory information and effective disclaiming material so that the use of this tape will not be preliminarily enjoined.

The Trade Video and Consumer Video 2 share certain elements. Both highlight a cover version of a popular song from the 1960's, "Did You Ever Have to Make Up Your Mind," by the Lovin' Spoonful, and a spoken text which twice states the slogan "SHOWTIME & HBO. It's Not Either/Or Anymore." Transcripts of the Trade Video and Consumer Video 2 appear in the Appendix. The visuals accompanying these texts consist of idyllic vignettes depicting indecision interspersed with short segments showing clips of movie stars from recent feature films. A series of short, briefly displayed written disclaimers, known as "supers" (super-imposed material, usually containing a disclaimer) compete with these images of film personalities.

With respect to the Trade Video, it is the conclusion of the Court that the efficacy of the written disclaimers is vitiated by the presence of competing visual stimuli. This is especially true as the disclaiming material appears in very small letters, and for very brief periods of time. This combination of small print, displayed briefly and in competition with attractive, competing visual stimuli vitiates the disclaiming material rendering it a nullity.

■ Showtime's Consumer Video 1 makes improvements upon the Trade Video; however, it is only with Consumer Video 2 that the integrity of Showtime and HBO as separate identities is scrupulously maintained via the use of disclaiming material.

In Consumer Video 2, Showtime makes substantial and significant changes in its promotional videotape. For example, the first spoken line which in the Trade Video had been, "Showtime or HBO?," is changed to "Showtime or its competitor HBO?" Not only does the addition of "its competitor" negate the notion of a business relationship between the two companies, but this information is spoken, rather than written, and it appears in a prominent part of the commercial—the first line. Moreover, this spoken material is backed by a "super" which states: "HBO is not affiliated with SHOWTIME and does not sponsor or endorse this announcement." This

material is in noticeable print and remains on screen for a reasonable period of time.

Shortly thereafter, the first line of the tape is repeated, again identifying HBO as Showtime's competitor. The spoken text goes on to explain Showtime's exclusive deals, including deals for "seven of 1986's top ten box office hits, hits you won't see on HBO." The spoken text then encourages the subscriber to purchase both services. Presently, the slogan "SHOWTIME and HBO. It's Not Either/Or Anymore" is stated twice, separated by an interval of song. Finally, in the most dramatic change between the Trade Video and Consumer Video 2 the commercial ends with a combined *spoken* and *written* disclaimer.

Simultaneously, the written disclaimer "HBO IS A TELEVISION SERVICE OF HOME BOX OFFICE, INC. WHICH ALSO DISTRIBUTES THE CINEMAX SERVICE. HBO IS NOT AFFILIATED WITH SHOWTIME, AND DOES NOT SPONSOR THIS ADVERTISEMENT OR RECOMMEND THE SHOWTIME SERVICE IN COMBINATION WITH HBO" appears in white letters, all capitals, and is accompanied by the spoken disclaimer "HBO and Cinemax are not affiliated with Showtime and do not sponsor or endorse this advertisement."

At the close of this commercial, there can be little doubt as to its sponsor. Whatever ambiguity may arise from the repeated slogan is sufficiently resolved by the added disclaimers.

■ Similarly, the defendant's "bill-stuffers," presented to the Court at oral argument on July 15, 1987, contained explicit disclaimers appropriate to the selected medium and in large type not easily overlooked. These disclaimers are adequate and the use of these materials will not be enjoined.

HBO contended in its briefs and at oral argument that disclaimers were insufficient to eliminate the likelihood of confusion created by defendant's advertising campaign. The cases cited by plaintiff are inapposite, and plaintiff's extreme position is not supported by the evidence.

HBO has presented no evidence that Consumer Video 2 or the bill-stuffing materials submitted to the Court cause actual confusion. Rather, HBO asks that the Court make a finding that these materials are likely to cause confusion based upon extrapolation from studies conducted using earlier promotional materials from the Showtime campaign. The Court has reviewed Consumer Video 2 and Showtime's bill-stuffing materials and finds that the disclaimers they contain are effective and adequate to prevent consumer confusion.

As the Second Circuit observed in *Consumer's Union of U.S. v. General Signal Corp.*, 724 F.2d 1044, 1053 (2d Cir.1983), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984):

> Disclaimers are a favored way of alleviating consumer confusion as to source or sponsorship. *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 130, [67 S.Ct. 1136, 1139, 91 L.Ed. 1386] (1947); *Societe Comptoir [v. Alexander's Dept. Stores, Inc.]*, supra, 299 F.2d [33] at 36 [2d Cir.1962]. Absolute prohibitions of speech as provided for in the instant preliminary injunction are improper where there is any possibility that an explanation or disclaimer will suffice. *In re R.M.J.*, 455 U.S. 191, 203 [102 S.Ct. 929, 937, 71 L.Ed.2d 64] (1982). There, in a slightly different context (attorney advertising), the Supreme Court held that the government "may not place an absolute prohibition on certain types of potentially misleading information ... if the information also may be presented in a way that is not deceptive ... [T]he remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation." *Id.*

For the foregoing reasons, the Court finds that with respect to Consumer Video 2 and defendant's exhibits E, F, G, H, I and J, plaintiff has not met its burden by showing irreparable harm and a likelihood of success on the merits. Moreover, with respect to the balance of hardships attending the instant action, that balance tips decidedly in defendant's favor, the reason being that should injunctive relief issue defend-

ant, Showtime, would be unable to distribute its campaign materials in time for the fall season, traditionally a period during which network and cable services launch their promotional campaigns.

*Pendant State Claim:*

In addition to its federal trademark claims, HBO alleges a pendant State claim contending that Showtime's advertising campaign violates the New York Anti-Dilution statute. N.Y.Gen.Bus.Law § 368–d. This statute provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

While State anti-dilution claims often appear as boilerplate in Lanham Act complaints, a claim for dilution differs markedly from a federal trademark claim and appears less well defined. As the Second Circuit has observed, "Dilution is not defined in § 368–d and remains a somewhat nebulous concept in New York decisions." *Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 625 (2d Cir.1983).

■ Taking the statute on its face, neither competition between the parties nor likelihood of confusion as to source are necessary elements of this cause of action. Rather, to make out a claim of dilution, plaintiff must show that its mark is "truly of distinctive quality" or has "acquired a secondary meaning in the mind of the public." *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 546, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977).

■ The second element of a dilution claim is the likelihood of dilution, which relates to the protection of a mark's selling power. "The essence of dilution is the watering down of the potency of a mark and the gradual debilitation of its selling power." *Toys "R" Us, Inc. v. Canarsie*

*Kiddie Shop, Inc.,* 559 F.Supp. 1189, 1208 (E.D.N.Y.1983).

The third element is predatory intent. *Sally Gee,* 699 F.2d at 626.

■ The Court need not determine whether HBO's mark was sufficiently distinct to warrant protection, or whether there was predatory intent on the part of Showtime because the essential, second element of a dilution claim is not present.

There is no suggestion by HBO, and it is not inferrable from the record, that the services offered by Showtime are inferior in quality to those of HBO, or that Showtime's use of HBO's mark will tarnish HBO's good reputation. Nor is there any evidence that would indicate that the distinctiveness of HBO's mark is being vitiated so that the selling power of the mark is being diluted. Indeed, the thrust of the Showtime campaign is that consumers buy both services. An effective advertising campaign, therefore, would actually benefit HBO by resulting in increased sales.

Accordingly, the Court is not inclined to grant injunctive relief on plaintiff's pendant State anti-dilution claim.

## CONCLUSION

Accordingly, plaintiff's motion for a preliminary injunction is granted in part and denied in part.

Defendant will be enjoined from the use of the phrases:

(1) "SHOWTIME & HBO. It's Not Either/Or Anymore;"

(2) "SHOWTIME & HBO. Together is better;"

(3) "Why SHOWTIME & HBO make such a perfect pair;"

(4) "Play the Showtime PERFECT (HBO, Showtime) PAIR Instant Winner Game;"

(5) "The MOVIE CHANNEL & HBO. It's Not Either/Or Anymore."

in their promotional or advertising materials unless a prominent disclaimer, appropriate to the selected medium accompanies their use. In this regard use of the Trade Video and Consumer Video 1 will be en-

joined as well as use of the promotional items distributed at the Las Vegas Trade Convention, to wit, the cookies, sunglasses, buttons, tote bags and posters admitted into evidence.

Similarly, defendant's mail-stuffers shall not use the above-referenced phrases unless a prominent disclaimer, appropriate to the selected medium accompanies their use. Defendant's exhibits E, F, G, H, I and J meet this requirement and their use is not enjoined.

In all other respects the motion for preliminary injunctive relief is denied.

SO ORDERED.

## APPENDIX

### "Trade Video"

#### Spoken Text

#### (Including Text Also Written)

SHOWTIME or HBO it used to be one of those tough choices.

(Song [music] in background)

Did you ever have to make up your mind
To pick up the one and leave the other behind
It's not often easy and not often kind
Did you ever have to make up your mind?
(Song ends)

It used to be a choice between SHOWTIME and HBO for great entertainment, but not anymore. SHOWTIME has made exclusive deals with some of Hollywood's top studios for blockbuster films plus we've got great concerts, series and specials you can't see on HBO. HBO has great movies too, so if you want to see it all, you have to have it all.

SHOWTIME & HBO IT'S NOT EITHER/OR ANYMORE

(Song begins again)

You have all you want
Don't leave nothing behind and
You'll never have to make up your mind.
(Song ends)

SHOWTIME & HBO IT'S NOT EITHER/OR ANYMORE

(Song begins again)

No you'll never never ever—ever have to make up your mind.

### "Trade Video"
#### ADDITIONAL WRITTEN TEXT

[Movie and other program titles]

TITLES EXCLUSIVE IN NATIONAL PAY CABLE

HBO IS A REGISTERED SERVICE MARK OF HOME BOX OFFICE INC.

SHOWTIME IS A REGISTERED SERVICE MARK OF SHOWTIME/THE MOVIE CHANNEL INC. WHICH PRODUCED THIS PIECE

SHOWTIME/THE MOVIE CHANNEL INC. IS NOT AFFILIATED WITH HOME BOX OFFICE INC.

©1987 SHOWTIME/THE MOVIE CHANNEL INC.

ALL RIGHTS RESERVED

#### Consumer Video 2

#### Transcript of Showtime Video

#### Advertisement (Exhibit 13)

#### [Text of Visual Disclaimers Appears in Brackets]

SHOWTIME or its competitor HBO?

[HBO is not affiliated with SHOWTIME and does not sponsor or endorse this announcement]

(Song in background)

Did you ever have to make up your mind?
To pick up on one and leave the other behind?
It's not often easy and not often kind,
Did you ever have to make up your mind?
Did you ever have to finally decide?
To say yes to one and let the other one ride?
(Song ends)

SHOWTIME or its competitor HBO, it's not a choice anymore. SHOWTIME has exclusive deals with some of Hollywood's top movie studios, plus we'll have seven of 1986's top ten box office hits, hits you won't see on HBO. So if you want to see it

all you should have them both. SHOW-TIME and HBO. It's not either/or any more.

(Song begins again)

Have all you want

Don't leave nothing behind

And you'll never have to make up your mind.

[HBO is a registered service mark of Home Box Office, Inc.]

(Song ends)

SHOWTIME and HBO. It's not either/or any more.

(Song begins again)

No you'll never never ever—ever have to make up your mind.

HBO and Cinemax are not affiliated with Showtime and do not sponsor or endorse this advertisement.

[HBO IS A TELEVISION SERVICE OF HOME BOX OFFICE, INC. WHICH ALSO DISTRIBUTES THE CINEMAX SERVICE. HBO IS NOT AFFIL-IATED WITH SHOWTIME, AND DOES NOT SPONSOR THIS ADVER-TISEMENT OR RECOMMEND THE SHOWTIME SERVICE IN COMBINA-TION WITH HBO.]