**HOME BOX OFFICE, INC.,**
Plaintiff–Appellant–Cross–Appellee,

v.

**SHOWTIME/THE MOVIE CHANNEL INC.,**
Defendant–Appellee–Cross–Appellant.

**Nos. 349, 376, Dockets 87–7640, 87–7716.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 25, 1987.
Decided Nov. 3, 1987.

John E. Nathan, New York City (Fish & Neave, New York City, Vincent N. Palladino, Susan Progoff, Lisa E. Cristal, Home Box Office, Inc., New York City, Thomas M. Woodbury, Harold E. Akselrad, of counsel), for plaintiff-appellant-cross-appellee.

Richard Z. Lehv, New York City (Weiss Dawid Fross Zelnick & Lehrman, P.C., New York City, Janet L. Hoffman, Stephen F. Mohr, of counsel), for defendant-appellee-cross-appellant.

Before LUMBARD, OAKES and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

Plaintiff Home Box Office (HBO) appeals from an order of the Southern District of New York by Judge Richard J. Daronco denying a motion brought by HBO for a preliminary injunction and instead granting a limited injunction. HBO began this action by seeking an injunction against defendant Showtime to prevent Showtime from using certain slogans in an advertising and promotional campaign for Showtime's cable television services. On July 15, 1987 following a hearing, the district court enjoined Showtime from using the contested slogans unless they were accompanied by disclaimers adequate to avoid confusing consumers. In that order, the district court specifically exempted certain promotional materials that Showtime presented to the court at the hearing. 665 F.Supp. 1079.

HBO contends that the district court erred by (1) considering Showtime's proposed amended advertisements at the preliminary injunction hearing instead of those originally submitted by the parties as the basis for the injunction, (2) denying HBO's motion for preliminary injunction, (3) ruling on Showtime's proposed advertisements when HBO did not have notice of, or the opportunity to be heard concerning those advertisements and by assigning HBO the burden of proof and (4) incorrectly applying the test for a preliminary injunction. Showtime cross-appeals, requesting that this court reverse the district court's grant of the preliminary injunction. We affirm the district court's issuance of a preliminary injunction order but vacate the portions of the order specifically exempting the promotional material presented by Showtime at the preliminary injunction hearing and making disclaimers an acceptable alteration of the promotional materials

which would allow Showtime to continue using the slogan.

## I.

HBO and Showtime are competitors in the subscription television field. Both programming services offer a variety of movies, concerts, sporting events and other programs. Both sell their television services primarily to cable operators who then sell them to consumer subscribers.

HBO identifies its service through its federally registered servicemark and trademark "HBO" which appears at the beginning of each program. HBO frequently promotes its companion "Cinemax" television service in tandem with its "HBO" service with slogans such as "HBO & CINEMAX." Showtime also frequently promotes its companion service, "The Movie Channel," along with its "Showtime" service with slogans such as "SHOWTIME/THE MOVIE CHANNEL."

At the National Cable Television Association Convention held in Las Vegas on May 17–20, 1987 (an industry trade show), Showtime launched a new advertising and promotional campaign using a new slogan as its theme. The primary slogan used was "SHOWTIME & HBO. It's Not Either/Or Anymore." (the "slogan"); the related slogans were: "THE MOVIE CHANNEL & HBO. It's Not Either/Or Anymore.", "SHOWTIME & HBO. Together is Better.", "Why SHOWTIME & HBO make such a perfect pair.", and "Play the Showtime PERFECT (HBO, Showtime) PAIR Instant Winner Game." The slogan was featured on a number of materials displayed or distributed at or near the Convention site. The materials included an outdoor highway billboard and a hot air balloon located outside the Convention Center; a rolling billboard that was driven around the Convention area; promotional videotapes played in public at the Las Vegas airport and in Convention hotel rooms; signs located in Showtime's Convention booth; promotional pens, tote bags, sunglasses, buttons and cookies distributed at Showtime's booth and/or to the hotel rooms of Convention attendees; advertise-

ments that were distributed at the Convention and which appeared in trade publications at or about the time of the Convention; packages of promotional material distributed to Showtime's cable affiliates at or about the time of the Convention; game cards; and a brochure emphasizing the value of subscribing to both HBO and Showtime. Some, but not all, of these materials contained disclaimers stating that HBO and Showtime were unrelated services.

HBO brought this action on June 30, 1987 for (1) the wrongful use in commerce of false designations of origin, false descriptions and false representations under 15 U.S.C. § 1125(a) [Lanham Act § 43(a)], (2) service mark infringement under 15 U.S.C. § 1114(1) [Lanham Act § 32(1)]; for service mark and trade name infringement and unfair competition at common law; and for violation of the New York Anti–Dilution Statute, New York General Business Law § 368–d. HBO's motion for preliminary injunction was designed to prevent Showtime from using the slogan and the related slogans in any future promotional materials.

HBO maintains that the slogan is confusing because it suggests that HBO and Showtime have merged or are engaged in a cooperative promotional campaign. To prove this, HBO produced evidence in the district court which tended to show that the slogan was the source of confusion because some observers perceived it to be part of a joint promotional campaign. The evidence presented by HBO included the promotional materials or representations of the materials used by Showtime at the Convention, a *Boston Globe* article that described the confusion caused by the slogan at the Convention among members of the cable television trade and a consumer reaction study in four cities that tested reactions to the videotaped commercial and the billboard that Showtime used at the Convention.

Showtime maintains that it adopted the slogan and undertook the related promotional campaign to educate consumers that Showtime has exclusive movies that are not available from HBO. Showtime asserts that its goal in using the slogan

was to differentiate the two services and to convince consumers to subscribe to its service as well as to HBO. Showtime thus emphasizes that it sought to inform the public that Showtime and HBO are different, not to suggest any link between the services. It points to the disclaimers of any link between HBO and Showtime, and especially to the new promotional materials presented to the district court at the preliminary injunction hearing that featured disclaimers more prominently than did the materials that Showtime displayed and distributed at the Convention.

HBO also applied for a temporary restraining order on June 30, 1987. The parties agreed to a consent order at a pretrial meeting on July 1 and began settlement negotiations. No agreement was reached, however, and on July 15, the district court held a preliminary injunction hearing. At that hearing, Showtime presented mockups of revised promotional materials and a modified videotape commercial. HBO objected to the district court's consideration of the modified materials on several grounds, including the grounds that it had not been accorded adequate notice of the new promotional materials and that Showtime was seeking an advisory opinion. The court overruled the objection and admitted the proposed materials into evidence.

Although finding that the slogan was not "patently false," Judge Daranco credited the results of HBO's study and found that, if used alone without "adequate disclaiming information appropriate to the selected medium," it was ambiguous and likely to confuse and mislead consumers. Based on its findings, the district court enjoined Showtime from using the slogan and the related slogans "unless a prominent disclaimer, appropriate to the selected medium accompanies their use." The court thus enjoined the materials used at the Convention and any other materials not featuring an adequate disclaimer but it specifically exempted the materials presented at the hearing from the terms of the order. This court granted HBO's motion to hear this appeal on an expedited basis.

## II.

The Lanham Act creates a claim for trademark infringement when a trademark holder can demonstrate that the use of its trademark by another is likely to confuse consumers as to the source of the product. *See* 15 U.S.C. §§ 1114(1)(a), 1125(a); *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). It is well established that in situations such as that presented by this case, the Lanham Act, 15 U.S.C. §§ 1051–1127, was designed to prevent likely confusion in the minds of consumers as to (1) the relationship between the trademark holder and a competitor seeking to use that trademark or a substantially similar mark in its own marketing efforts and (2) the source of the product being represented by the trademark or a substantially similar mark. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986).

We agree with the district court that to succeed on a motion for preliminary injunction the movant must establish: (a) irreparable harm and (b) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985). We further agree that in trademark cases, "[i]n the preliminary injunction context, a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm." *Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir.1982); *see also Mushroom Makers, supra*, at 47.

The record amply supports the district court's finding that the slogan and the related slogans create a likelihood of consumer confusion. We are in accord with the district court's analysis of the slogan and its finding that the evidence produced by HBO (including the materials distributed and displayed at the Convention and the

survey sponsored by HBO and conducted by the Sorensen Marketing/Management corporation) was sufficient to satisfy HBO's burden of demonstrating that Showtime's use of its trademark would confuse and mislead consumers. The slogan and the related slogans are, on their face, ambiguous. They are subject to being interpreted to mean either (1) that Showtime and HBO carry different programming and that consumers who desire to see all the current feature movie programming on cable television must subscribe to both (the interpretation advanced by Showtime) or (2) that Showtime and HBO have merged, are jointly marketing their services (possibly to the exclusion of their independent services) or are engaged in some other type of cooperative production or marketing venture (the interpretation advanced by HBO).

In so far as the district court found the slogan to be potentially misleading, we agree with its findings that any use of the slogan by itself in the context used by the materials that were distributed at the Convention would create the likelihood of confusion necessary for the court to issue an injunction. This likelihood of confusion, coupled with the likelihood that HBO will also succeed on the merits, makes a preliminary injunction the proper remedy.

■ Although we agree with the district court's application of the likelihood of confusion standard to Showtime's promotional materials, our view of the proper role of disclaimers in trademark infringement cases is somewhat different. Although we have found disclaimers to be adequate in certain cases, each case must be judged by considering the circumstances of the relevant business and its consumers. We have found the use of disclaimers to be an adequate remedy when they are sufficient to avoid substantially the risk of consumer confusion. *See, e.g., Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 355 (2d Cir.1983); *Berlitz Schools of Languages v. Everest House*, 619 F.2d 211, 215 (2d Cir.1980). In many circumstances a disclaimer can avoid the problem of objectionable infringement by significantly reducing or eliminating consumer confusion by making clear the source of a product. *See Soltex Polymer Corporation v. Fortex Industries, Inc.*, 832 F.2d 1325 (2d Cir.1987) (minimal to moderate amount of consumer confusion found by district court could be cured effectively through the use of a disclaimer). We believe, however, that the record before us is not sufficient to support a finding that the disclaimers proposed by Showtime will be effective in substantially reducing consumer confusion. In fact, our examination of some of the promotional materials first submitted to the district court by Showtime as exhibits at the preliminary injunction hearing indicates to us that some of the potentially confusing statements are not effectively disclaimed because the disclaiming information does not appear in sufficiently close proximity to the infringing statements. As an example, we find Showtime's use of disclaimers to be especially problematic in the case of one of the multiple panel brochures submitted to the district court which had an infringing use on its back panel and a disclaimer only appearing on an inside panel. In addition, we believe that the district court should not have received or reviewed the revised promotional materials that Showtime presented at the hearing because this process did not provide sufficient notice to HBO or an adequate opportunity to be heard on the proposed disclaimers.

■ Requiring infringing users such as Showtime to demonstrate the effectiveness of proposed disclaimers is supported by cases from other circuits in which the use of a disclaimer by an infringing user has been found not to be sufficient to avoid consumer confusion in the marketplace. *See, e.g. United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981); *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1134–35 (9th Cir.1979). In addition, we note that there is a body of academic literature that questions the effectiveness of disclaimers in preventing consumer confusion as to the source of a product. *See* Jacoby & Raskoff, *Disclaimers as a Remedy for Trademark Infringement Litigation: More Trouble Than They Are Worth?*, 76 Trademark Rept. 35

(1986); Radin, *Disclaimers as a Remedy for Trademark Infringement: Inadequacies and Alternatives,* 76 Trademark Rept. 59 (1986); 2 H. Nims, *Unfair Competition and Trademarks* §§ 366f, 379a (4th ed. 1947).

These authors have concluded that disclaimers are frequently not effective. One discussion concluded that disclaimers, especially those (like the disclaimers in question in this case) which employ brief negator words such as "no" or "not," are generally ineffective. *See Jacoby & Raskopf, supra* at 54. This conclusion was based on a study of the effect of disclaimers on football jerseys, an example of the effect of corrective advertising, and a generalized framework involving behavioral science research. The authors recommended that courts should consider the effectiveness of a proposed disclaimer more carefully and "[w]henever disclaimers are considered, empirical studies should be used to evaluate their likely impact. At the very least, no disclaimer should issue without a full hearing regarding its likely effectiveness." *Id.* at 57–58 (citations ommitted), *see also Radin, supra* at 72. Radin also advocates the use of other methods either to make a disclaimer more effective or wholly unnecessary; the primary method he advocates is altering the context in which the infringing use occurs to make consumer confusion less likely. *Id.* at 71.

Although it is conceivable that a disclaimer could alleviate the likelihood of confusion that the district court found in this case, the court did not have before it sufficient evidence regarding the revised promotional materials to decide that their disclaimers rendered them significantly less likely to confuse consumers so that they might be exempted from the injunction.[1] This is especially so as HBO had no opportunity to consider the proposed disclaimers and produce evidence as it had with respect to the slogans and disclaimers that Showtime used at the Convention.

In further proceedings before the district court, Showtime should be free to apply for relief from the injunction, on the basis of its use of disclaimers or otherwise, after it gives adequate notice to HBO.

Upon such an application there would be a heavy burden on Showtime to come forward with evidence sufficient to demonstrate that any proposed materials would significantly reduce the likelihood of consumer confusion. *Accord Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc.,* 832 F.2d 1317 (2d Cir.1987). We do not believe that Showtime, at any point in this litigation, has met this burden and until it satisfies the district court on the basis of a proper showing, it may not use HBO's trademark in its slogan or the related slogans.

We appreciate that this assignment of the burden of proof, unlike the method utilized by the district court, might make it significantly more difficult for Showtime ever to use these slogans. Nevertheless, we believe that it is an appropriate allocation of burdens between these parties for several reasons. First, it acknowledges that by granting the preliminary injunction, the district court found that HBO had adequately proved that the slogan as Showtime first employed it was likely to cause consumer confusion. Second, it recognizes that by using the slogans as they were presented at the Convention, Showtime was infringing on HBO's trademark and, therefore, that Showtime has no right to use the mark unless and until it can demonstrate that, because of some change in the slogan or the context in which it is presented, its use will no longer constitute an infringement. Third, it alleviates the unnecessary hardship that could be imposed on HBO if it repeatedly had to catch up with Showtime's use of its trademark by adequately demonstrating that each new permutation of the slogan and its context was likely to mislead consumers. Fourth, and finally, it is the allocation of the burden of proof which best accords with our interpretation

---

1. Throughout this litigation, HBO has never challenged Showtime's previous uses of its trademarks in comparative advertising campaigns, in fact, it concedes that it never objected to these uses because they considered them a legitimate form of comparative advertising.

of the Lanham Act as a means of protecting trademark holders and the public from confusion as to the source and promotion of products.

We affirm the district court's issuance of a preliminary injunction but vacate that portion of the order which allowed Showtime to continue using the slogan if it utilizes an appropriate disclaimer and that portion which exempted the revised promotional materials presented to the district court at the hearing conducted before the district court on July 15, 1987. We deny Showtime's cross appeal. This case is remanded for further proceedings consistent with this opinion.