**The UNITED STATES SHOE CORPORATION, Plaintiff,**

v.

**BROWN GROUP, INC., Defendant.**

**No. 90 Civ. 0907 (PNL).**

United States District Court, S.D. New York.

May 11, 1990.

Blum Kaplan, New York City (Randy Lipsitz, Howard M. Gitten, of counsel), for plaintiff.

Cowan, Liebowitz & Latman, New York City (J. Christopher Jensen, of counsel), for defendant.

### MEMORANDUM AND ORDER

LEVAL, District Judge.

Plaintiff United States Shoe Corp. ("U.S. Shoe"), asserts trademark violation and unfair competition against Brown Group, Inc., in connection with the advertising and sale of women's dress shoes. Plaintiff advertises its women's dress pumps under the slogan and musical jingle, "Looks Like a Pump, Feels Like a Sneaker." Defendant has launched an advertising campaign that compares its pump to a sneaker and asserts that it "feels like a sneaker." Plaintiff seeks a preliminary injunction barring defendant from using the phrase. An evidentiary hearing was held on submission.

#### Background

The facts are largely undisputed. In August 1987, the plaintiff began to sell walking shoes under the Easy Spirit trademark. In or around October 1988, the plaintiff introduced under the same trademark a line of "comfortable women's dress pumps" which were intended to incorporate design and comfort elements of the plaintiff's walking shoes. Since that time, Easy Spirit pumps have been promoted and ad-

vertised by associating them with sneakers, and in particular by using the slogan or tag line, "Looks Like a Pump, Feels Like a Sneaker." Hepting Affidavit at 2. This slogan has been prominently featured in plaintiff's print ads, point of purchase displays, catalog sheets and promotional brochures. Exhibits 1–6 to Hepting Affidavit. It has also been used in a widely distributed television commercial, in which the slogan is sung while women are pictured playing basketball in Easy Spirit dress shoes. Hepting Affidavit at 2. The plaintiff spent more than nine million dollars on advertising including the slogan in 1988 and 1989. *Id.* at 3–4. During this time, sales increased dramatically. *Id.* at 4–5. Sales of Easy Spirit pumps increased between 56% and 133% in the relevant market in the several weeks following runs of plaintiff's television commercial. *Id.* at 5.

The defendant is the manufacturer and distributor of the NaturalSport line of walking shoes, and also of the Townwalker, a comfortable women's dress pump considered to be one of the key competitors of the Easy Spirit dress pump. In mid–1988, defendant retained the advertising agency D'Arcy, Masius, Benton & Bowles ("D'Arcy") to develop an ad campaign for the Townwalker and other NaturalSport shoes. D'Arcy recommended a campaign to communicate the basic product concept of the Townwalker: "a sneaker in a pump." Zimmerman Declaration at 3–4. D'Arcy submitted several proposed print ads for the Townwalker to the defendant, including some which used the slogan, "The pump that feels like a sneaker." The defendant rejected these ads, in part because of their similarity to plaintiff's advertising slogan, "Looks Like a Pump, Feels

Like a Sneaker," of which defendant was aware. *Id.* at 4–5. *See also* Zimmerman Deposition at 37 (defendant aware of plaintiff's slogan when selecting its own advertisements); Newton Affidavit at 12–13 (D'Arcy aware of plaintiff's slogan when creating advertisements for defendant).[1]

The print advertisement ultimately selected by defendant features a photograph of a women's pump with the headline, "Think Of It As A Sneaker With No Strings Attached." The text of the ad includes the phrase, "And when we say it feels like a sneaker, we're not just stringing you along." The ad includes the NaturalSport logo, the slogan, "Walk Our Way" and the words "From Naturalizer," which defendant uses to advertise other styles of shoe in the NaturalSport line. Zimmerman Declaration at 5–6.

Plaintiff contends that the Townwalker ad's statement "And when we say it feels like a sneaker" is deliberately meant to mislead consumers into believing the Townwalker is the brand previously advertised by the slogan, "Looks Like a Pump, Feels Like a Sneaker," and thus cause consumers to purchase defendant's pump rather than plaintiff's. Plaintiff alleges that this constitutes a violation of the Lanham Act, as well as unfair competition and trademark violation under state common law.[2]

## Discussion

In order for a movant to prevail on its motion for a preliminary injunction, it must demonstrate both "(a) irreparable harm and (b) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's fa-

---

1. D'Arcy's report to the defendant noted that "the Easy Spirit advertising campaign is very effective in bringing consumers into the stores," and that "many retailers have had customers asking for the basketball shoe," meaning the shoe advertised with women playing basketball. Zimmerman Deposition at 100–101.

2. Plaintiff also asserts that defendant has copied many of the other marketing concepts developed by the plaintiff, such as the use of basketball imagery and the idea of a television ad showing women in dress pumps participating in

track events. However, it appears that plaintiff does not claim these alleged copyings constitute trademark infringement, or that plaintiff has the exclusive right to associate dress pumps with the comfort of athletic footwear. Plaintiff's Reply Brief at 8. Rather, plaintiff details these other instances of alleged copying to support its contention that defendant's use of the phrase "feels like a sneaker" was adopted in bad faith, as part of an effort to appropriate plaintiff's marketing schemes for defendant's benefit.

vor." *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1314 (2d Cir.1987).

### A. *Likelihood of Success on the Merits*

■ To prove infringement, a trademark owner must demonstrate that the alleged infringer's use of the mark is likely to cause confusion or mistake as to the origin of the two products. When a mark is made of descriptive terms, the alleged infringer may defend his use of the terms by demonstrating that he used them in good faith in their descriptive sense and not as a trademark, thus making "fair use" of descriptive terms, as codified in Section 33(b)(4) of the Lanham Act. 15 U.S.C. § 1115(b)(4).

For the purposes of plaintiff's motion, I will assume that U.S. Shoe through heavy advertising has succeeded in establishing an association in the minds of the public between its descriptive slogan and its product. Nonetheless, I conclude that defendant's advertising claim that the Town-walker shoe "feels like a sneaker" does not infringe plaintiff's trademark.

■ Defendant's use of the words "feels like a sneaker" falls squarely within the "fair use" defense codified in Section 33(b)(4) of the Lanham Act. The fair use doctrine provides a statutory defense to a trademark infringement claim when "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a trade or service mark, ... of a term or device which is *descriptive of and used fairly and in good faith only to describe* to users the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4) (emphasis added). The purpose of the defense is to prevent the trademark rights of one party from being extended to preclude another party from the description of his product to the public. *See Eli Lilly & Co. v. Revlon, Inc.*, 577 F.Supp. 477, 486 (1983). When the plaintiff chooses a mark with descriptive qualities, the fair use doctrine recognizes that "he cannot altogether exclude some kinds of competing uses," particularly those which use words in their primary descriptive and non-trademark sense. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 12 (2d Cir.1976). *See also Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F.Supp. 1058, 1064 (S.D.N.Y.1990); *Charles of the Ritz Group, Ltd. v. Marcon Ltd.*, 635 F.Supp. 158, 160–161 (S.D.N.Y.1986).

An understanding of statutory fair use doctrine depends on the purposes and justifications of the trademark law. In general, the law disfavors the grant of exclusive monopoly rights. Exceptions exist, however, where the grant of monopoly rights results in substantial benefits to society. Because of the benefits to society resulting from the ability easily to recognize the goods or services of a purveyor or manufacturer, the trademark law grants the exclusive right to employ an identifying mark. A reciprocal benefit results. The merchant is thereby permitted to profit from a well earned reputation; the public is thereby enabled to choose the products produced by those who have satisfied them in the past, avoid those that have disappointed and recognize an unknown quantity as exactly that. The benefits are great, and because potential identifying marks exist in virtually inexhaustible supply, the cost of the monopoly to society is minimal.

The cost-free aspect of the trademark depends, however, on the exclusivity being practiced only over identifiers that are not needed by others for trade communication. If only one manufacturer of candy were permitted to call the product "candy"; if only one were permitted to say that it is "lemon flavored," then society would not be enriched but impoverished. Society would be deprived of useful information about competing products, and one supplier would receive an unfair and unjustified advantage over competitors. Thus the trademark law presumptively forbids the establishment of rights over "generic" or "descriptive" marks—marks that define or describe the product. An exception was permitted, however, to a user of a descriptive mark who over time had built up a customer recognition (secondary meaning) in the mark. It would be unfair to permit com-

petitors to piggyback on the reputation earned by such a merchant. Thus a showing of acquired secondary meaning would overcome the presumptive ineligibility of descriptive words to exclusive reservation.

A user of a descriptive word may acquire the exclusive right to use that descriptive word *as an identifier* of the product or source. This, however, does not justify barring others from using the words in good faith *for descriptive purposes* pertinent to their products. Returning to the example of the candy manufacturers, the fact that one might acquire trademark rights over a descriptive identifier like "chewy" or "lemon flavored" cannot deprive society of the opportunity to be advised by other manufacturers that their candy is chewy or lemon flavored. Therefore, notwithstanding the establishment of trademark rights over a descriptive term by a showing that it has acquired secondary meaning, the statute preserves in others the right to the use of such terms "fairly and in good faith only to describe [and not to designate] the goods or services." 15 U.S.C. § 1115(b)(4). The purpose of this provision is to ensure that the according of monopoly trademark rights over descriptive marks (upon a showing of acquired secondary meaning) will not overbroadly deprive society of the use of those terms in their descriptive sense in commercial communication.

In this case, the defendant uses the phrase "feels like a sneaker" in a descriptive sense, claiming a virtue of the product. It essentially restates the key selling claim of defendant's product—that the Townwalker shoe was designed specifically to incorporate the comfort of athletic shoes.

Moreover, defendant is not using the phrase as an identifier or trademark to indicate origin or source. That function is performed in defendant's ad by the NaturalSport logo, which is prominently displayed, and by the slogan, "Walk our Way ... From Naturalizer." Defendant's use of the words "feels like a sneaker" is not even as a caption or slogan, but as a fragment of a sentence in small print. In short, defendant uses the words "otherwise than as a trade or service mark, ... fairly and in good faith only to describe to users the goods" marketed by defendant. 15 U.S.C. § 1115(b)(4). Under the fair use doctrine, such a use is not an infringement. There is no justification for permitting plaintiff to monopolize an essentially descriptive phrase which claims virtues, simply because plaintiff may have been the first to employ it in widely distributed advertisements.[3]

Plaintiff, furthermore, has not demonstrated a sufficient likelihood of confusion as to source to justify a finding of infringement. Descriptive advertising claiming a product's virtues is likely to be understood as such rather than as an identifier of source. No confusion should be presumed from the defendant's use of descriptive words similar to plaintiff's, because the consumer is likely to understand that it is the claimed features of both products that are being discussed, and not their origin. Notwithstanding that plaintiff may have built up consumer recognition in its slogan and musical jingle, there is no reason to suppose that consumers will assume that any manufacturer who claims his shoes feel like a sneaker is the plaintiff. This is a standard descriptive approach to a claim of comfort and is unlikely to be understood as an identifier. Plaintiff has not met its burden of demonstrating that defendant's ad is likely to confuse consumers as to the source of defendant's product.

---

**3.** Plaintiff argues that the defendant's bad faith should prevent it from enjoying the benefits of the fair use defense. However, I find that plaintiff has not demonstrated that defendant acted in bad faith. While it is clear that defendant designed its marketing strategy in full knowledge of plaintiff's ad campaign, and with appreciation of the success of plaintiff's sneaker metaphor, *see* Zimmerman Declaration at 3–5, that is not necessarily evidence that defendant acted with the specific intent to misappropriate plaintiff's good will. Where two products are essentially similar, and ways to describe their key selling feature limited, some overlap in language used to describe them is almost inevitable. The fact that one manufacturer used the descriptive language first, and the other one knew about it, does not demonstrate that the second user chose overlapping language in bad faith.

Plaintiff submits a consumer survey, designed by an experienced survey researcher, which demonstrates that defendant's print advertisement reminds consumers of plaintiff's advertisements more than do the ads of other brands. *See* Affidavit of Dr. Michael Rappeport at 3. To say that defendant's ads remind consumers of plaintiff's ads is very different from saying that they confuse consumers as to the source. Ads may be reminiscent of one another if they focus on similar claims about the products. It does not follow that they create confusion about the sources.[4] *See Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 728 F.Supp. 1442 (C.D.Cal.1989) (survey finding a high level of association between defendant's product and plaintiff's does not demonstrate that consumers are actually confused between the two); *Ideal Toy Corp. v. Kenner Products*, 443 F.Supp. 291, 305, 308 (S.D.N.Y.1977) (survey finding that defendant's product reminds consumers of plaintiff's does not mean that prospective purchaser thinks the two are derived from the same source).

The fact that defendant's print advertisement includes prominent references to its own distinctive brand name makes it even less likely that consumers will confuse defendant's ad as coming from the same source as plaintiff's advertisements. Defendant's ad contains a fairly large reproduction of the NaturalSport logo (which is quite different from plaintiff's logo), and the slogan, "Walk Our Way ... From Naturalizer." Defendant's advertisement is distinguished from that of plaintiff in other ways. Whereas the caption in plaintiff's ad is its slogan, "Looks Like a Pump, Feels Like a Sneaker," defendant's bold print caption reads, "Think of It as a Sneaker With No Strings Attached." The "feels like a sneaker" phrase in defendant's ad is not in the caption, but in smaller print

below, and appears not as a separate slogan but as a fragment of a sentence in a paragraph of text.

In short, defendant's advertisement is not designed to, nor is it likely to, cause confusion between plaintiff and defendant in the consumer's mind. It simply advances defendant's message that its shoes have the comfort of sneakers, using language which is essentially descriptive. The fact that the plaintiff used similar language in describing a similar product does not entitle it to exclusivity in claiming virtues of the product. The purpose of trademark law is not to give any promoter or seller an exclusive opportunity to make advertising claims about its product. It seeks only to permit clear brand recognition for the mutual benefit of the merchant and the consuming public.

### B. *Irreparable Harm/Balance of Hardships*

In addition to its failure to show likelihood of success on the merits, or even "serious questions going to the merits," *Home Box Office*, 832 F.2d at 1314, plaintiff has also failed to demonstrate a balance of hardships tipping decidedly in its favor. The evidence shows that there are other manufacturers in addition to plaintiff and defendant who are advertising women's pumps by direct reference to the comfort of a sneaker. Although plaintiff may well be better off in competition if it were granted the exclusive right to advertise by such a claim, it has shown no injury to its mark recognition.

Defendant, on the other hand, has convincingly shown that the issuance of an injunction would visit substantial harm on it. Defendant has spent more than $200,-000 in developing and placing its print ad, much of which would be lost by pulling the ad at this point. Moreover, some of the

---

**4.** Plaintiff concedes that the general idea of relating dress shoes to the comfort of sneakers is not protectible. *See* Plaintiff's Reply Brief at 8. Thus, to the extent that consumers associate defendant's ad with that of plaintiff simply because both use the sneaker metaphor, no action for trademark infringement will lie. *See Haagen–Dazs v. Frusen Gladje Ltd.*, 493 F.Supp. 73, 75

(S.D.N.Y.1980) (no infringement where defendant merely imitates an effective marketing theme but product names and trade dress are clearly distinguishable); *Warner Bros. v. American Broadcasting*, 530 F.Supp. 1187, 1197 (S.D.N.Y.1982) (mere use of ideas or marketing techniques of another does not constitute infringement).

magazines containing the ad have already been printed and distributed. Recalling these magazines, or paying their publishers to reprint issues without the Townwalker ad, would be extremely expensive. *See* Zimmerman Declaration at 13. Finally, the defendant would be forced to incur the expense of developing a substitute advertisement in a short time span. The balance of hardships does not tip in plaintiff's favor.

### Conclusion

For the numerous reasons stated above, plaintiff's motion for a preliminary injunction is hereby denied.[5]

SO ORDERED.

---

**5.** The same reasons which justify denying the motion under a trademark analysis also pertain to plaintiff's unfair competition claim. *See Warner Bros. Inc. v. American Broadcasting Co., Inc.,* 720 F.2d 231, 247 (2d Cir.1983); *Wonder Labs Inc. v. Procter & Gamble,* 728 F.Supp. 1058, 1064 (S.D.N.Y.1990) (likelihood of confusion is "indispensable part" of unfair competition claim); *Andy Warhol Enterprises, Inc. v. Time, Inc.,* 700 F.Supp. 760, 763 (S.D.N.Y.1988) (same). Here, where defendant has named and dressed its product in ways which clearly differentiate as to origin, and only imitate as to marketing theme, likelihood of confusion has not been shown.