20-3369-cv
*Hamilton International Ltd. v. Vortic LLC*

# United States Court of Appeals
# for the Second Circuit

August Term, 2020

(Argued: June 3, 2021     Decided: September 14, 2021)

Docket No. 20-3369

———————————————————

HAMILTON INTERNATIONAL LTD.,

*Plaintiff-Appellant*,

v.

VORTIC LLC, D/B/A VORTIC WATCH CO., VORTIC TECHNOLOGY LLC,
AND ROBERT THOMAS CUSTER,

*Defendants-Appellees.*

———————————————————

Before:

LOHIER AND NARDINI, CIRCUIT JUDGES, AND CRONAN, DISTRICT JUDGE[*]

Hamilton International Ltd. sued Vortic LLC and its founder, Robert Thomas Custer, for selling wristwatches that featured restored antique pocket watch parts with Hamilton's trademark. Following a bench trial, the District Court entered judgment on all claims in favor of Vortic and Custer after finding that Vortic's use of the mark was not likely to cause consumer confusion. Hamilton appeals that decision, primarily arguing that the District Court erroneously applied *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947), a case involving trademark infringement in the context of used goods, when assessing the sufficiency of Vortic's disclosures. Arguing that a defendant in a trademark

---

[*] Judge John P. Cronan, of the United States District Court for the Southern District of New York, sitting by designation.

infringement action bears the burden of demonstrating the adequacy of its disclosures, and that its burden varies with the degree of consumer confusion, Hamilton maintains that the District Court should have first analyzed the factors identified in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), before applying *Champion*.  Hamilton also challenges the District Court's factual findings in evaluating the *Polaroid* factors.

We reject each of Hamilton's arguments.  In doing so, we confirm that a plaintiff in a trademark infringement suit bears the burden of proving that a defendant's use of its mark is likely to mislead consumers, even when *Champion* is implicated, and that no particular order of analysis is required, provided that the district court considers all appropriate factors in light of the circumstances presented.  The District Court's judgment is **AFFIRMED**.

> MICHAEL ASCHEN, Abelman Frayne & Schwab, New York, New York (Anthony DiFilippi, *on the brief*), *for Plaintiff-Appellant*
>
> ROBERT D. LANTZ, Castle Lantz Maricle, LLC, Denver, Colorado; Jin-Ho King (*on the brief*), Milligan Rona Duran & King LLC, Boston, Massachusetts, *for Defendants-Appellees*

CRONAN, *District Judge*:

Plaintiff-Appellant Hamilton International Ltd. ("Hamilton"), a large and well-known manufacturer of watches, brought suit against Defendants-Appellees Vortic LLC, *doing business as* Vortic Watch Co. ("Vortic"), and its founder Robert Thomas Custer, alleging trademark infringement, counterfeiting, unfair

competition, and dilution.[1]  Vortic, also a watchmaker, sold "The Lancaster," a watch that featured refurbished antique pocket watch parts retaining Hamilton's original trademark.  Hamilton now appeals from a final judgment entered in favor of Vortic and Custer in the United States District Court for the Southern District of New York (Nathan, *J.*) following a one-day bench trial.  *See Hamilton Int'l Ltd. v. Vortic, LLC*, 486 F. Supp. 3d 657 (S.D.N.Y. 2020).

This case turns on the question of consumer confusion.  The Supreme Court in *Champion Spark Plug Co. v. Sanders* held that in the context of refurbished goods, the likelihood of consumer confusion is determined by looking to the disclosures a second-hand dealer provides to purchasers.  331 U.S. 125, 128–31 (1947).  The District Court, relying on *Champion*, first concluded that Vortic had fully disclosed the watch's restoration and lack of affiliation with Hamilton.  The District Court then considered the general factors that we have identified as informing the likelihood of confusion in trademark infringement actions.  *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  Weighing both Vortic's full disclosure under *Champion* and the relevant *Polaroid* factors, the District Court

---

[1]  At trial, the District Court dismissed Vortic Technology LLC as a defendant without objection.

found no likelihood that a significant number of ordinary prudent purchasers would be misled by the use of Hamilton's mark on The Lancaster.

On appeal, Hamilton challenges the District Court's factual findings and analysis. The District Court's factual findings—which we review for clear error—were supported by the trial record. The District Court correctly evaluated those findings in light of the legal standards established in *Champion* and *Polaroid* to conclude that Hamilton failed to prove a likelihood of consumer confusion. In affirming the District Court, we confirm that a plaintiff in a trademark infringement suit bears the burden of proving that a defendant's use of the mark is likely to mislead consumers, even when *Champion* is implicated, and that no particular order of analysis is required provided that the court considers all appropriate factors in light of the circumstances of the case. We therefore **AFFIRM** the judgment of the District Court.

## I. BACKGROUND

### A. Relevant Facts

The following facts were established at the bench trial held on February 19, 2020.

Hamilton, or its predecessor,[2] has owned the "Hamilton" trademark since 1909. Prior to 1969, Hamilton manufactured pocket watches at its U.S. factory in Lancaster, Pennsylvania. Custer founded Vortic in 2013 and, seeking to "preserve American history," endeavored to make a watch that would be "100% Made in America." App'x at 82, 369–70. Custer discovered, however, that at the time, no active companies in the United States produced watch movements, *i.e.*, "the gears and springs in a system needed to tell time." *Id.* at 370. As a result, Vortic salvaged and restored parts from antique American-made pocket watches originally manufactured in the late 1800s and early 1900s and then encased them in new wristwatches. Those included antique parts from watches bearing Hamilton's trademark.

At issue is Vortic's line of wristwatches called "The Lancaster." Named after the Pennsylvania city where Hamilton was originally based, The Lancaster features restored antique pocket watch movements and front dials made by the Hamilton Watch Company between 1894 and 1950. The Lancaster has a large pocket watch-style knob located at the 12 o'clock position. The watch's wrist strap

---

[2] Before 1971, Hamilton's predecessor, the Hamilton Watch Company, manufactured watches in America. Hamilton is now owned by Swatch Group, Ltd., a Swiss company.

and the case surrounding its movements and dial—as well as various internal engineering parts such as the crowns, screws, and inserts—were manufactured by Vortic or came from modern sources in the United States. Because Vortic used a restored original front dial, Hamilton's trademark is readily visible on the front of the watch. The back of The Lancaster is encased in a glass cover, revealing the watch's movements, which feature the engraved words, "Hamilton Watch Lancaster, PA." The back case is surrounded by a metal ring with the words "Vortic Watch Co." and "The Lancaster" engraved on it, along with Vortic's serial number for the watch. Below is a picture of the front and back of The Lancaster:



App'x at 216–17.

Vortic produced and distributed fifty-eight of these watches from 2014 to 2018. Each buyer received the watch in a wooden box with a booklet that displayed Vortic's logo and described Vortic's manufacturing, assembly, and restoration process. The box also contained an original watchmaking certificate, when available, as well as a "Vortic Watch Company Authentication Card." That card provided the watch's Vortic serial number and movement serial number, and was signed by the Vortic watchmaker who did the conversion. Vortic's advertisements for The Lancaster similarly emphasized the antique and authentic nature of the watch's parts.

## B.   Procedural Background

Hamilton caught wind of The Lancaster and sent Vortic a cease-and-desist letter on July 10, 2015. Hamilton filed suit against Vortic two years later, on July 21, 2017. The Complaint alleged that Vortic, at Custer's direction, sold The Lancaster with Hamilton's mark and without Hamilton's consent or authorization, causing confusion as to the watch's origin and giving the false impression that the watch was offered by, or affiliated with, Hamilton. Hamilton pleaded claims of

7

trademark infringement and counterfeiting in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1116; false designation of origin and unfair competition, also in violation of the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement; and trademark infringement, dilution, unfair competition, and injury to business under New York General Business Law section 360. Hamilton sought injunctive and declaratory relief, as well as monetary damages.

On February 15, 2019, Hamilton moved for summary judgment on all its claims. The District Court denied Hamilton's motion, on September 30, 2019, finding genuine disputes of material facts as to both disclosure under *Champion* and the application of the *Polaroid* factors. *Hamilton Int'l Ltd. v. Vortic LLC*, 414 F. Supp. 3d 612, 618–22 (S.D.N.Y. 2019). On January 10, 2020, the District Court denied Hamilton's motion for reconsideration of that decision. *Hamilton Int'l Ltd. v. Vortic LLC*, No. 17 Civ. 5755 (AJN), 2020 WL 122908 (S.D.N.Y. Jan. 10, 2020).

**C.    The Bench Trial and the District Court Judgment**

The District Court held a one-day bench trial on February 19, 2020. On September 11, 2020, the District Court issued its Findings of Fact and Conclusions of Law, entering judgment in favor of Vortic and Custer on all of Hamilton's claims. *Hamilton Int'l Ltd. v. Vortic LLC*, 486 F. Supp. 3d 657 (S.D.N.Y. 2020).

The District Court focused on the likelihood of consumer confusion, applying the Supreme Court's decision in *Champion* as well as the factors we identified in *Polaroid*. The District Court explained that, under *Champion*, "[f]ull disclosure" of the identity of the restorer and the used nature of the product protects the seller of second-hand goods from liability for a claim of trademark infringement. *Id.* at 662 (alteration in original). Accordingly, the District Court gave "strong weight to the 'full disclosure' factor" under *Champion*, but "also consider[ed] the traditional *Polaroid* variables it [found] to be applicable." *Id.* at 663.

The District Court began by examining Vortic's promotional materials and its website, concluding that these "materials do not suggest any affiliation or sponsorship between Vortic and Hamilton but rather convey accurately that the restored Hamilton movements and parts are only 'constituent[s] in the article now offered as new and changed.'" *Id.* (alteration in original) (quoting *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 369 (1924)). The District Court then examined the watch itself. The District Court pointed to particular characteristics of The Lancaster which would lead reasonable consumers to view it "as restored antique pocket watch movement, face, and hands that have been reincorporated into a new wristwatch."

9

*Id.* at 663–64. The District Court noted that The Lancaster was bigger than a regular wristwatch, had a large knob located at the 12 o'clock position rather than the 3 o'clock position typical for wristwatches, and the "hands, face, and movement ha[d] a patina, style, and look that convey[ed] that they [were] restored antiques." *Id.* at 664. The District Court also found that an ordinary prudent purchaser viewing the watch in isolation would conclude "that the Hamilton mark is only displayed because Hamilton created the original movement, face, and hands that have subsequently been restored." *Id.* The District Court "note[d] that 'Vortic,' 'Lancaster,' and the serial number are all prominently engraved on the case while the Hamilton mark is only visible inside the glass case, on a movement and face that appear obviously antique." *Id.*

The District Court then turned to the *Polaroid* factors. While the District Court discussed all of the factors, it noted that actual confusion, the defendant's good faith, and the sophistication of the buyers were the only "*Polaroid* factors that [were] indisputably relevant in this case." *Id.* at 666–67; *see Hamilton Int'l Ltd.*, 414 F. Supp. 3d at 621 (on summary judgment, finding only these three factors to be relevant). The District Court found no evidence of actual confusion, discounting the only evidence that Hamilton offered at trial—one potential customer's email

to a Hamilton brand manager inquiring about a vintage Hamilton watch—because of concerns about the reliability of that email. *See Hamilton Int'l Ltd.*, 486 F. Supp. 3d at 667. The District Court further found that Vortic and Custer demonstrated good faith in producing The Lancaster, crediting Custer's testimony and "concluding that he did not intend to cause consumer confusion but rather sought to 'preserve American history' by salvaging and restoring the hearts of antique pocket watches." *Id.* (citing Custer's testimony). Lastly, the District Court noted the highly sophisticated nature of the customer base. *Id.* at 668. For an expensive watch like The Lancaster, the District Court reasoned, potential customers "would be particularly attuned to the disclosure provided and would almost certainly seek out easily accessible information about the watch before making this substantial investment." *Id.*

After weighing the full disclosure under *Champion* and the *Polaroid* factors, the District Court found no likelihood of confusion. *Id.* The District Court therefore entered judgment in favor of Vortic and Custer on Hamilton's federal trademark infringement claim, as well as on its other claims, each of which also required some degree of consumer confusion. *Id.* at 668–69.

## II. DISCUSSION

### A.    Standard of Review

"In reviewing the decision of a district court following a bench trial, we review findings of fact for clear error and conclusions of law *de novo*." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 697 (2d Cir. 2007) (Katzmann, *J.*). "Under the clearly erroneous standard, 'the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.'" *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016) (quoting Fed. R. Civ. P. 52(a)(6)). "'We are not allowed to second-guess the court's credibility assessments,' and '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Id.* (alteration in original) (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)). On the issue of consumer confusion in federal trademark infringement actions, a trial court's findings as to each *Polaroid* factor are typically reviewed for clear error, with the court's weighing of those factors reviewed *de novo*. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009).

**B.     Hamilton's Trademark Infringement Claim: Likelihood of Confusion**

The primary question on appeal is whether the District Court properly found in favor of Vortic and Custer on Hamilton's federal trademark infringement claim. A plaintiff alleging trademark infringement in violation of the Lanham Act "must demonstrate that (1) 'it has a valid mark that is entitled to protection' and that (2) the defendant's 'actions are likely to cause confusion with [that] mark.'" *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (alteration in original) (quoting *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)). The parties do not dispute the validity of Hamilton's trademark or that The Lancaster featured that trademark. We therefore focus on whether the District Court erred in finding no likelihood of consumer confusion in the watch's use of that trademark.

A plaintiff must show "a probability of confusion, not a mere possibility," affecting "numerous ordinary prudent purchasers." *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993). This "includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005) (quoting *Guinness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc.*, 64

13

U.S.P.Q.2d 1039, 1041 (S.D.N.Y. 2002)); *see Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 634 (S.D.N.Y. 2008) ("The hallmark of infringement is the likelihood of confusion by the buying public between the plaintiff's goods or services and that of the defendant." (first citing *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir. 2000); and then citing *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508–09 (2d Cir. 1997))). To prove confusion, a plaintiff may show that the public believed "the owner of the mark actually produced the item and placed it on the market," or that the public believed "the mark's owner sponsored or otherwise approved the use of the trademark*." Star Indus., Inc.*, 412 F.3d at 383–84 (internal quotation marks and citation omitted).

We have identified a non-exhaustive list of factors for district judges to analyze when considering whether a mark's use is likely to cause confusion. *See Polaroid Corp.*, 287 F.2d at 495. These so-called *Polaroid* factors are: (1) "the strength of [the] mark"; (2) "the degree of similarity between the two marks"; (3) "the proximity of the products"; (4) "the likelihood that the prior owner will bridge the gap"; (5) "actual confusion"; (6) "the reciprocal of defendant's good faith in adopting its own mark"; (7) "the quality of defendant's product"; and (8) "the

sophistication of the buyers." *Id.*; *accord Starbucks Corp.*, 588 F.3d at 115; *Star Indus., Inc.*, 412 F.3d at 384.

1.    *The District Court's Application of* Champion

We begin with Hamilton's argument that the District Court erred in applying *Champion* to assess whether there was a likelihood of consumer confusion. The District Court identified and applied the *Polaroid* factors, focusing on the ones that it found particularly relevant in this action. *See Hamilton Int'l Ltd.*, 486 F. Supp. 3d at 666–68. But the District Court also correctly recognized that application of these non-exhaustive factors is not a "mechanical process," and "depending on the complexity of the issues, 'the court may have to take still other variables into account.'" *Id.* at 662 (first quoting *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016); and then quoting *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004)); *accord Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995) ("No single factor is dispositive, and cases may certainly arise where a factor is irrelevant to the facts at hand."). Thus, while *Polaroid* articulated general standards to apply in assessing consumer confusion, particular situations may call for a more refined analysis. In its 1947 decision in *Champion*, the Supreme Court identified one such situation.

15

In *Champion*, a manufacturer of spark plugs with the trademark "Champion" sued a second-hand dealer who collected used "Champion" plugs, refurbished them, and sold them. 331 U.S. at 126. The Supreme Court found it permissible for the reused plugs to retain the "Champion" trademark, despite the second-hand dealer lacking authorization to use that trademark, because of disclosures made by that seller. *Id.* at 129–30. The Court determined that the retention of the "Champion" logo would not mislead consumers, because the plugs were "nevertheless Champion plugs and not those of another make," and contained the words "Used" or "Repaired" stamped on the plugs, which "serve[d] the requirements of full disclosure." *Id.* at 128–30. In reaching this result, the Court explained that while "inferiority is expected in most second-hand articles," any "[i]nferiority is immaterial so long as the article is clearly and distinctively sold as repaired or reconditioned rather than as new." *Id.* at 129–30. Citing its prior decision in *Prestonettes*,[3] the Court explained that it "is wholly permissible"

---

[3] In *Prestonettes*, the plaintiff sold toilet powder and perfume. 264 U.S. at 366. The defendant purchased the plaintiff's powder, added "a binder to give it coherence," and sold the substance in a metal case. *Id.* The defendant also bought the plaintiff's perfume and repackaged it in smaller bottles for resale. *Id.* at 366–67. The district court allowed the defendant to continue selling both products, as long as it attached certain clarifying labels which included the plaintiff's

for a second-hand dealer to obtain an advantage from the trademark, "so long as the manufacturer is not identified with the inferior qualities of the product resulting from wear and tear or the reconditioning by the dealer." *Id.* at 130. "Full disclosure," the Court explained, "gives the manufacturer all the protection to which he is entitled." *Id.* The *Champion* Court cautioned, however, that "[c]ases may be imagined where the reconditioning or repair would be so extensive or so basic that it would be a misnomer to call the article by its original name, even though the words 'used' or 'repaired' were added." *Id.* at 129. The takeaway from *Champion* is that, when a used "genuine product" is resold after being refurbished, the seller's disclosures and the extent of a product's modifications are significant factors to consider in whether that seller is liable for trademark infringement.

---

trademarked name. *See id.* at 367. The Supreme Court found no trademark violation in the sale of goods labeled as such. Specifically, the Court determined that the defendant "by virtue of its ownership had a right to compound or change what it bought," and as long as the packaging truthfully disclosed that it contained the plaintiff's product, no trademark infringement occurred in the sale even if the packaging used the plaintiff's trademarked name. *Id.* at 368–69. The Court explained that a trademark does not "prohibit the use of the word or words," and "[w]hen the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth." *Id.* at 368. The defendant's use of the trademark "to say that the trade-marked product is a constituent in the article now offered as new and changed," *id.* at 369, was therefore permissible.

Hamilton argues that the "reconditioning or repair" that went into The Lancaster was so extensive that the District Court erred in applying *Champion* in the first place. According to Hamilton, The Lancaster is not "a modified genuine Hamilton product," but rather a "*new watch* that contains various Hamilton parts." We find no error in the District Court's determination that the facts as found at trial brought this case under *Champion*.

The District Court determined, with ample support from the evidence adduced at trial, that Vortic used genuine, original parts from pocket watches made by Hamilton, refurbished and repaired them, and modified them into a wristwatch. The only modification to the original movements was the replacement of a lever which makes it easier for users to change the time. Describing this as an "apparently slight modification," the District Court noted that Hamilton failed to put forth any reason why such a modification would have been "particularly significant to consumers or . . . somehow material to a likelihood of confusion." *Hamilton Int'l Ltd.*, 486 F. Supp. 3d at 665. And after inspecting the watch, as well as viewing photographs of the watch, the District Court concluded that a consumer would view The Lancaster as an antique pocket watch modified into a wristwatch rather than an entirely new product. *Id*. at 664

("[T]he Court finds that the watch obviously presents to a viewer as restored antique pocket watch movement, face, and hands . . . reincorporated into a new wristwatch. . . . [T]he hands, face, and movement have a patina, style, and look that convey that they are restored antiques."). In light of those findings, which were supported by the trial evidence and were not clearly erroneous, the District Court properly analyzed Hamilton's federal trademark infringement claim under the framework laid out in *Champion*.

    2.      Champion's *Interaction with the* Polaroid *Factors and the Burden of Proof*

Hamilton also takes issue with the sequence in which the District Court considered *Champion* and *Polaroid*. Hamilton argues that the District Court erred by failing to first determine the likelihood of confusion under the *Polaroid* factors before turning to the "full disclosure" analysis under *Champion*. Hamilton contends that a defendant bears the burden of showing that *Champion*'s "full disclosure" standard is met, and that the weight accorded this burden can only be determined by first measuring the level of confusion through an analysis of the *Polaroid* factors.

We conclude that the District Court did not err in declining to require Vortic to prove the effectiveness of its disclosures under *Champion*. Initially, it is worth

19

noting that Vortic did in fact offer proof that its disclosures were effective: Custer testified that the company has never been contacted by anyone confused as to Hamilton's affiliation with Vortic's watches, and Hamilton offered no evidence to the contrary that the District Court found reliable. But more importantly, in a trademark infringement case, the plaintiff bears the burden of proving a likelihood of consumer confusion in the alleged infringer's use of the mark. *See, e.g., Star Indus., Inc.*, 412 F.3d at 383 ("To prevail in a trademark infringement action under the Lanham Act, a plaintiff must prove, in addition to protectability of the mark, 'a probability of confusion, not a mere possibility,' affecting 'numerous ordinary prudent purchasers.'" (quoting *Gruner + Jahr*, 991 F.2d at 1077)). The District Court correctly looked to *Champion* and at the disclosures made by Vortic in determining whether Hamilton met that burden.

Hamilton's reliance on decisions where we placed the burden on a defendant to prove the effectiveness of proposed disclaimers is misplaced. *See Charles of the Ritz Grp., Ltd. v. Quality King Distribs. Inc.*, 832 F.2d 1317 (2d Cir. 1987); *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311 (2d Cir. 1987). Hamilton appears to conflate "full disclosure" under *Champion*, which is relevant to an *initial* finding of likelihood of confusion, with an infringer's

proposed "disclaimers" proffered at the remedy stage of a trademark infringement action to assist the court in fashioning the appropriate injunctive relief. It is in that latter situation, after a finding of trademark infringement, that the burden of showing the sufficiency of a disclaimer shifts to the defendant. *See, e.g.*, *Charles of the Ritz Grp. Ltd.*, 832 F.2d at 1324; *Home Box Office*, 832 F.2d at 1315–16.[4] As we explained in *Home Box Office*, it was appropriate to place the burden on the defendant at that point because the defendant had "no right to use the mark unless and until it [could] demonstrate that . . . its use will *no longer* constitute an infringement." 832 F.2d at 1316 (emphasis added). In contrast here, however, there had been no finding that Vortic infringed on Hamilton's trademark because of the absence of a showing by Hamilton of consumer confusion.

---

[4] Our decisions following *Home Box Office* and *Charles of the Ritz Group* have continued to hold that a defendant must justify the effectiveness of its proposed disclaimers at the remedy stage, after a finding of a substantial likelihood of confusion. *See, e.g.*, *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 143–44 (2d Cir. 2005) (explaining that where "an infringer attempts to avoid a substantial likelihood of consumer confusion by adding a disclaimer, it must establish the disclaimer's effectiveness" (citations and footnote omitted)); *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 70–71 (2d Cir. 2002) (remanding for the district court to discern the severity of consumer confusion and require the defendant to "justify the remedy").

Furthermore, our precedents confirm that a court is not required to consider factors relevant to likelihood of confusion in any set order. A court's analysis under *Polaroid* is a flexible one: "The application of the *Polaroid* test is not mechanical, but rather focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) (internal quotation marks and citation omitted). In the context of trademark infringement cases involving the resale of refurbished goods, *Champion* informs that consumer confusion analysis. Both *Polaroid* and *Champion* are thus aimed at discerning whether a consumer would be misled by the defendant's use of the plaintiff's trademark. There is no hard and fast order in which a court must undertake that analysis.

In sum, the District Court properly placed the burden of proving trademark infringement on Hamilton, and correctly analyzed the relevant considerations under *Polaroid* and *Champion*.

3.      *The District Court's Findings Under* Champion *and* Polaroid

We turn next to Hamilton's challenges to the District Court's findings under *Champion* and *Polaroid.* We find no error, clear or otherwise, in either.

In conducting its *Champion* analysis, the District Court identified several ways that Vortic disclosed that The Lancaster contained refurbished original parts and was not affiliated with Hamilton. For example, a magazine advertisement explained that Vortic's watches are "custom fabricated using railroad era, American made pocket watch movements to create timeless, one-of-a-kind wristwatches for individuals with contemporary vision." App'x at 368, 373; *see Hamilton Int'l Ltd.*, 486 F. Supp. 3d at 663. Another advertisement explained: "All of the components (movement, dial, hands) between the two Gorilla Glass crystals are ~ 100 years old, and started their life in a Railroad-Era pocket watch made by the Hamilton Watch Company. The watches were made in Lancaster Pennsylvania in the late 1800's and early 1900's." App'x at 375; *see Hamilton Int'l Ltd.*, 486 F. Supp. 3d at 663. Vortic's website further stated that the company "uses vintage movements whose case has been scrapped for its precious metal value, and meticulously restores the inner workings in order to build a completely custom watch around it." App'x at 375; *see Hamilton Int'l Ltd.*, 486 F. Supp. 3d at 663.[5]

---

[5] Hamilton argues that the advertisements from Vortic's website were not admitted into evidence at trial and should not have been considered by the District

23

In addition to these promotional materials, the District Court cited the watch itself in assessing the adequacy of Vortic's disclosures. Relying on its own examination of The Lancaster, the District Court explained that the watch—with its larger size, the 12 o'clock knob position, and the general look of its parts as restored antiques—"obviously presents to a viewer as restored antique pocket watch movement, face, and hands that have been reincorporated into a new wristwatch." *Hamilton Int'l Ltd.*, 486 F. Supp. 3d at 664. The District Court further found that The Lancaster "would convey to any ordinary prudent purchaser that the watch was made by Vortic and that the Hamilton mark is displayed only because Hamilton created the original movement, face, and hands that have

Court. The record shows that Vortic's counsel, without objection, expressed his intention to enter pictures of the website as exhibits into the evidence. It appears, however, that these documents were inadvertently left out of the record. By considering these exhibits, the District Court clearly found them to be both admissible and relevant, and Hamilton fails to provide any substantive grounds for why this evidence should have been excluded. In any event, we conclude that any error on this issue was harmless because the District Court could have considered the contents of the advertisements as they were directly quoted in Custer's sworn affidavit—which was admitted into evidence without objection— and because the District Court found that other advertisements in the record satisfied the full disclosure factor. *See Tesser v. Bd. of Sch. Dist.*, 370 F.3d 314, 319 (2d Cir. 2014) ("[A]n evidentiary error in a civil case is harmless unless [the appellant demonstrates that] it is likely that in some material respect the factfinder's judgment was swayed by the error." (second alteration in original) (internal quotation marks and citation omitted)).

24

subsequently been restored," "not[ing] that 'Vortic,' 'Lancaster,' and the serial number are all prominently engraved on the case while the Hamilton mark is only visible inside the glass case, on a movement and face that appear obviously antique." *Id.*

These factual findings, all firmly grounded in the record, fully supported the District Court's conclusion that Vortic adequately disclosed the origin of The Lancaster and its lack of affiliation with Hamilton. And the District Court properly weighed Vortic's full disclosure heavily in its consumer confusion analysis. *See id.* at 663 (explaining that it would "give strong weight to the 'full disclosure' factor").

Hamilton relies on three cases from other Circuits to argue that no disclosures could be adequate when watches are "extensively modified." *See Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704 (9th Cir. 1999); *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816 (5th Cir. 1998); *Bulova Watch Co. v. Allerton Co.*, 328 F.2d 20 (7th Cir. 1964). To the extent Hamilton claims that these decisions found *Champion* inapplicable to modified watches, we disagree. All three cases applied *Champion*'s reasoning to find that alterations made to the watches at issue resulted in new products, and that, under the facts presented, no disclosure could adequately dispel the likelihood of consumer confusion stemming from the modifications.

25

The courts in *Michel Co.* and *Bulova Watch Co.* cited *Champion* before looking to the record to decide whether there was adequate disclosure. *See Michel Co.*, 179 F.3d at 710 (explaining that the defendant's disclosure did not "convey[] basic changes that have been made to the watch" and that "the face of the watch" at issue could not "support a more adequate legend"); *Bulova Watch Co.*, 328 F.2d at 24 (noting that "[i]t is obvious that the area of the exposed portion of the dial of the cased 6 ¾ X 8 ligne movement is such [that] no appropriate and readable legend could be placed thereon which would satisfy the disclosure requirements the facts and circumstances here demand"). Likewise, although the court in *Meece* did not cite *Champion*, it echoed *Champion*'s reasoning when it relied on "case law interpreting the Lanham Act as prohibiting a party from making changes in integral parts of a product and then selling the modified product under the original trademark without *full disclosure*." *Meece*, 158 F.3d at 825 (emphasis added). And, just as in *Bulova Watch Co.* and *Michel Co.*, the *Meece* court's finding of trademark infringement was tied to the circumstances of that case. *See id.* (basing its decision on "[c]onsider[ation] . . . of [all] the evidence and, especially, the district court's findings regarding the likelihood of confusion with respect to secondary purchasers").

26

Thus, these decisions have little persuasive weight where, as here, adequate disclosures *could* be provided. For these reasons, we find no error in the District Court's factual findings or its conclusion that Vortic's disclosures were adequate under *Champion*.

Nor was there any clear error in the District Court's factual findings as to the *Polaroid* factors. In light of its determination that Vortic provided full disclosure under *Champion*, the District Court found three *Polaroid* factors to be particularly significant in this case: actual confusion, the defendant's good faith in adopting the mark, and the product's customer base. Most of Hamilton's arguments on appeal as to these factors amount to disagreement with the District Court's credibility determinations. It is axiomatic, of course, that "[c]lear error review mandates that we defer to the District Court's factual findings, particularly those involving credibility determinations." *Phoenix Glob. Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 76 (2d Cir. 2005). And we do so here.

The District Court first found that Hamilton failed to proffer any proof of actual confusion after declining to credit Hamilton's sole evidence on this point: an email from a prospective customer stating that her friend was "looking for a vintage Hamilton as per attached." App'x at 229–31. Hamilton attached to the

exhibit pictures of two advertisements for The Lancaster, contending that they were attached to that email. Yet Hamilton's authenticating witness was unable to confirm at trial whether those advertisements were indeed attached to the email and, after observing this witness testify at trial, the District Court discounted this evidence. Similarly, the District Court's finding that Custer and Vortic did not act in bad faith was supported by Custer's trial testimony describing his intent in founding Vortic and manufacturing The Lancaster. Nor do we accept Hamilton's unsupported proposition that continued sales of The Lancaster after Vortic's receipt of a cease-and-desist letter necessarily demonstrates bad faith. *See W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993) ("[A]doption of a trademark with actual knowledge of another's prior registration of a very similar mark may be consistent with good faith." (quoting *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 584 (2d Cir. 1991))). Finally, the District Court's finding as to the sophistication of the relevant consumer base was grounded in uncontroverted evidence that the average price of Vortic's watches ranged from $1,500 to $5,000, as well as Custer's testimony describing Vortic's customers as "college-educated men . . . with above-average income," most of whom "own multiple wristwatches." App'x at 113, 375; *see Star Indus. Inc.*, 412 F.2d at 390 (explaining

28

that proof of consumer sophistication is not limited to "expert opinions or surveys," and "a court is entitled to reach a conclusion about consumer sophistication based solely on the nature of the product or its price").

We also find no error in the District Court's determination that the other *Polaroid* factors were less relevant in this case. *Cf. Arrow Fastener Co.*, 59 F.3d at 400 ("[I]t is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why.").[6] But regardless, the District Court considered each of the five remaining *Polaroid* factors and properly weighed them in accordance with the trial evidence.

---

[6] Indeed, the District Court's decision to place less emphasis on certain *Polaroid* factors is consistent with *Champion*. The defendant in *Champion* used the plaintiff's exact trademark, and the Supreme Court noted that while "inferiority is expected in most second-hand articles," it is "immaterial so long as the article is clearly and distinctively sold as repaired or reconditioned rather than as new." 331 U.S. at 129–30. Accordingly, the Court suggested that as long as there was full disclosure as to the refurbished nature of the item, factors such as the strength of the mark, similarity between marks, and quality of the products would be less relevant. Similarly, while a traditional *Polaroid* analysis instructs that closer competitive proximity of the products leads to a greater probability of consumer confusion, the analysis in *Champion* suggests that in the context of second-hand goods, similarity of the products could work to a defendant's advantage. *See id.* at 129 (emphasizing as critical to the Court's holding that "[t]he repair or reconditioning of the plugs d[id] not give them a new design").

While the District Court determined that Hamilton's mark was "relatively strong," it found that the other factors supported entering judgment in favor of Vortic and Custer on Hamilton's federal trademark claim. Relying on the disclosures that it discussed in its *Champion* analysis, the District Court properly concluded that the "similarity of the marks" factor did not support a finding of confusion given the context in which the mark appeared on The Lancaster. *See Hamilton Int'l Ltd.*, 486 F. Supp. 3d at 666; *Star Indus. Corp.*, 412 F.3d at 386 (holding that the similarity of products factor is not to be analyzed in isolation, but instead includes a consideration of "the context in which" the trademark is found (internal quotation marks and citation omitted)); *Estee Lauder Inc.*, 108 F.3d at 1511 (finding that although the defendant used the plaintiff's trademark on similar products, this factor did not weigh toward confusion because "each product [was] labeled to show which company is its source").

Nor do we find any error in the District Court's analysis of the "proximity of the products" factor. Hamilton argues that it competes in the same marketplace as Vortic, *i.e.*, the watch market, and the District Court therefore should have found this factor to militate in favor of a likelihood of confusion. The District Court found, however, that the relevant market was one for antique or refurbished

watches. This finding was supported by Custer's testimony that Vortic catered to consumers interested in antiques related to American history, and Hamilton failed to provide any evidence that it sold similar types of watches or that both companies sold their products in the same channels of commerce. *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996) (specifying that courts must look to the "structure of the relevant market," which includes an analysis of "the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold" (quoting *Vitarroz v. Borden, Inc.*, 644 F.2d 960, 967 (2d Cir. 1981))).

With regard to "the likelihood that the prior owner will 'bridge the gap,'" Hamilton failed to provide any evidence that it intended to enter Vortic's market by manufacturing and distributing restored watches with antique parts. Finally, the District Court weighed the trial testimony and found that Hamilton failed to demonstrate that The Lancaster was of a lower quality than Hamilton's products. Hamilton relied on a single online post in which Custer suggested that The Lancaster was not for everyday use because "wearing [the watches] on the wrist will jar them more than usual." App'x at 208–11. Custer, however, was extensively questioned about this post at trial, and testified that it was made

31

during an early phase of The Lancaster's production and before any watches were sold to consumers. And Hamilton did not provide any proof as to the durability of their own products as a comparison. *See Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 505 (2d Cir. 1996) (explaining that this factor looks to whether the defendant's product is inferior or equal in quality to the plaintiff's product).

As the above discussion demonstrates, a common theme emerged from the bench trial: Hamilton—which bore the burden of establishing confusion—failed to come forward with any reliable evidence showing that consumers were likely to be misled. We find no clear error in the District Court's factual findings in connection with its analysis under *Champion* or in connection with the *Polaroid* factors. We further conclude that the District Court correctly applied *Champion* and *Polaroid* to these factual findings to conclude that there was no likelihood of consumer confusion.

## C.    Hamilton's Remaining Claims

As the District Court noted, its analysis of Hamilton's trademark infringement claim under the Lanham Act necessarily compelled judgment in favor of Vortic and Custer on Hamilton's remaining claims. This is because each of those claims required some showing of a likelihood of consumer confusion. *See*

15 U.S.C. § 1114(1)(a) (federal counterfeiting claim requiring the plaintiff to show that the use of the counterfeit mark is "likely to cause confusion, or to cause mistake, or to deceive"); *Starbucks Corp.*, 588 F.3d at 114 (enumerating the six-factor test for dilution by blurring under New York law, with the factors resembling the *Polaroid* factors and similarly focusing on confusion); 15 U.S.C. § 1125(a) (federal unfair competition claim presenting same standard as federal trademark claim); *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 335 (2d Cir. 2020) (explaining that a New York "unfair competition claim turn[s] on a likelihood of consumer confusion"). Having found no likelihood of consumer confusion, the District Court properly concluded that Vortic and Custer were entitled to judgment on these claims as well.

## III. CONCLUSION

For the foregoing reasons, the District Court's judgment is **AFFIRMED.**